UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-353-GWU

LINDA S. WILKERSON, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Linda Wilkerson brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

>whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-353 Linda S. Wilkerson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Wilkerson, a 36-year-old former school bus monitor and child monitor with a high school education, suffered from impairments related to a major depressive disorder, bipolar disorder, borderline intelligence, headaches, and asthma. (Tr. 18, 23). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 21, 23). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 24). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

07-353 Linda S. Wilkerson

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work, restricted from a full range by an such non-exertional restrictions as (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb ramps or stairs; (3) a need to avoid exposure to temperature extremes, fumes, dust, smoke, chemical and noxious gases; (4) a "limited but satisfactory" ability to deal with co-workers, the public and supervisors; and (5) a "severely limited but not precluded" ability to deal with work stresses and to handle detailed instructions. (Tr. 657). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 657-658). Therefore, assuming that the vocational factors considered by Ellis fairly depicted Wilkerson's condition, a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Wilkerson has not argued that the ALJ erred in evaluating her physical condition. Dr. David Hiestand examined the plaintiff and reported that "no physical evidence of significant restriction in patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or ability to travel was observed." (Tr. 464). Dr. Mark Burns also examined the claimant and reported that her physical examination was within normal limits. (Tr. 573). Dr. Burns opined that Wilkerson had no impairment in such areas as sitting, standing,

moving about, lifting, carrying, handling objects, hearing, seeing, speaking and traveling. (Id.). The ALJ's findings were compatible with both of these opinions.

Dr. Parandhamulu Saranga, a non-examining medical reviewer, opined that Wilkerson would be restricted to light level work restricted from a full range by an inability to more than occasionally climb ladders, ropes and scaffolds as well as a need to avoid concentrated exposure to environmental pollutants. (Tr. 492-499). Dr. Sudideb Mukherjee, another non-examiner medical reviewer, also reported a need to avoid exposure to cold and humidity. (Tr. 500-507). The ALJ's findings are consistent with these opinions.

More severe physical limitations than those found by the ALJ were not identified by such treating and examining sources as the staff at Knox County Hospital (Tr. 134-139, 332-337), Dr. Paul Pedersen (Tr. 146-237, 326-329, 338-344), and the staff at Knox Family Medicine (Tr. 508-511). These reports, along with the aforementioned medical evidence, provide substantial evidence to support the administrative decision with regard to Wilkerson's physical condition.

The ALJ also dealt properly with the evidence of record relating to Wilkerson's mental status. Psychologist Crystal Sahner examined the plaintiff and noted a diagnostic impression of post-traumatic stress disorder. (Tr. 144). The plaintiff's Global Assessment of Functioning (GAF) was rated at 52-54. (Tr. 145). Such a GAF suggests the existence of "moderate" psychological symptoms

07-353 Linda S. Wilkerson

according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. The examiner opined that the claimant would be "moderately" limited in dealing with co-workers or supervisors, and would be "markedly" limited in her ability to tolerate with work stresses. (Id.). The mental factors of the hypothetical question were compatible with these restrictions.

Wilkerson sought treatment for her mental problems at the Cumberland River Comprehensive Care Center. In July of 2004, the claimant was diagnosed as suffering from a panic disorder with agoraphobia and a depressive disorder. (Tr. 260). However, the Cumberland River staff specifically noted that the plaintiff's mental problems did not impose restrictions in such areas as societal/role functioning, interpersonal functioning, daily living/personal care functioning, and cognitive/intellectual functioning, and her level of functioning in all these areas was rated as "high." (Tr. 247). A diagnosis of depressive disorder and borderline intelligence was noted in June of 2006. (Tr. 528). Mental restrictions were again not imposed in any area and her functioning was rated as "slightly high" in such areas as societal/role functioning, interpersonal functioning, and daily living. (Tr. 534). The mental factors of the hypothetical question were also compatible with these findings and these reports provide substantial evidence to support the administrative decision.

07-353  Linda S. Wilkerson

Wilkerson argues that the ALJ erred in rejecting the intelligence testing scores produced by Psychologist Reba Moore which indicated that she suffered from mild mental retardation.  Moore examined the plaintiff on two occasions and obtained verbal IQ scores of 61 and 63 and full scale IQ scores of 63 and 64 upon intelligence testing, which would fall within the mild mental retardation range and which the examiner considered to be valid for the claimant's <u>current</u> level of functioning. (Tr. 469, 579).  Wilkerson asserts that the ALJ impermissibly acted as his own medical advisor in rejecting these scores because he reviewed school records in determining that these scores were not valid.

The ALJ actually examined the school records in the context of determining whether Wilkerson's mental problems met the requirements of § 12.05(C) of the Listing of Impairments concerning mild mental retardation.  This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, App. 1, § 12.05(C).  The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence supports onset of the impairment before age 22."  20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05.  Thus, to satisfy the

11

requirements of § 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment. Contrary to the plaintiff's argument, the ALJ did not find these scores were invalid based on a review of the school records. Rather, the ALJ concluded that the Listing was not met, at least in part, because review of the school records did not support a finding that the claimant had experienced deficits in adaptive functioning prior to the age of 22 as required to meet the requirements of § 12.05(C). (Tr. 22). The ALJ noted that the Hardin County School records did not reveal that she had been enrolled in special education. (Tr. 22, 450). In addition to reviewing school records, the ALJ took into consideration the plaintiff's work history. (Tr. 22). After this review, the ALJ concluded that the IQ scores obtained during Moore's testing were insufficient to prove mild mental retardation was manifested prior to the age of 22. (Id.). Moore herself indicated that these scores related to the claimant's current level of functioning and did not attempt to relate them back before the age of 22. (Tr. 469, 581). Therefore, the court finds no error.

    The undersigned notes in passing that the mental limitations indicated by Moore were somewhat vague. The examiner suggested some limitation in understanding instructions and getting along with co-workers and supervisors as well as in maintaining attention and concentration. (Tr. 472, 581). These

07-353 Linda S. Wilkerson

restrictions are essentially consistent with the ALJ's findings. Even if they were not, Moore's opinion would be offset and outweighed by those of Sahner and the Cumberland River staff.

Wilkerson also argues that the hypothetical question did not fairly characterize her mental status because the ALJ did not include all of the mental restrictions identified by the medical reviewers. Psychologist Ilze Sillers, a non-examining medical reviewer, reported "moderate" limitations in in such areas as maintaining attention and concentration for extended time periods, responding appropriately to changes in the work setting and interacting appropriately with the general public in a September, 2003 assessment. (Tr. 473-474). Reviewers Stephen Scher (Tr. 296-297), Thompson Prout (Tr. 300-301) and Ann Demaree (Tr. 598-599) all added a restriction concerning the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable length and number of rest periods. To the extent that these restrictions would be considered more severe than those found by the ALJ, the court notes that they are offset and outweighed by the opinions of Cumberland River and Sahner, the treating and examining sources. The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(d)(1). Therefore, the court finds no error.

13

07-353 Linda S. Wilkerson

This undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 24th day of July, 2008.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**